## CLIFF v. BENHARD & CLOPTON.
### No. 1936.

Court of Appeal of Louisiana.
First Circuit.
Jan. 11, 1939.

Pavy & Pavy, of Opelousas, for appellant.

J. Y. Fontenot, of Opelousas, for appellee.

LE BLANC, Judge.

This is a suit instituted by the plaintiff, Will Cliff, against the defendants Benhard and Clopton, an ordinary partnership composed of J. H. Benhard and B. W. Clopton, for a balance of $566.59 alleged to be due by them on a certain job performed by him as a sub-contractor under them in the Atchafalaya Spillway in the Parish of St. Landry. Part of the balance due is on account of certain work which he did directly under the defendants and not under the contract referred to.

He alleges that under his contract he was to "burm", that is cut and remove trees, stumps and roots to a depth of four inches below the surface of the ground for which he was to be paid at a stipulated price per acre and he also worked for the defendant as a machine-skidder operator by the day and at the time of the completion of his work, on December 18, 1933 there was due him the sum of $566.59, as shown by a statement prepared by the defendants' bookkeeper at their suggestion, which statement is annexed to his petition. He avers amicable demand without avail.

There is no dispute regarding the work performed by plaintiff both as a sub-contractor and by employment and whilst it is admitted that he was given the statement on which his demand is predicated the defense is that that statement was a true and correct account as far as the items thereon shown are concerned. Defendants aver further, however, that the plaintiff well knew that the statement furnished him only included checks chargeable against him which had been returned by the Bank and were in their possession at the time, but that it did not include checks that were yet out or still at the bank and that plaintiff at the time of filing his suit well knew that the statement failed to show payments made on his account in excess of the amount due him as shown thereon. Defendants annex what they allege to be a complete statement of their account with the plaintiff and which shows that he is indebted unto them in the sum of $48.65. They do not, however, reconvene against him for that amount.

After trial, the lower court rendered judgment in favor of the defendants, dismissing the plaintiff's suit, and the latter has appealed.

The plaintiff testified that the understanding was when he went to work under the defendants that he would be paid in full once a month; that the defendants themselves were sub-contractors under the Trinity Farm Construction Company and that Benhard's excuse for not paying him regularly was that the Construction Company did not pay him. He states that after he had completed the work on December 18, 1933 he spoke to Mr. Clopton, who prevailed upon Benhard to have Mr. W. A. Waterbury, who was engaged by them as a bookkeeper in another of their enterprises known as the Palmetto Mercantile Company, make up a statement for

him. He says that he secured the statement from Waterbury on that day, that he carried it to Benhard a day or two later and that Benhard gave him a check in the sum of $125 on account of the balance due as shown on the statement, which check for some reason or other was unpaid but was substituted by another which was paid in January, 1934. He also states that at that time he informed Benhard that he owed an account of $108 to a store in Port Barre and that Benhard went personally with him to this store and told the manager, a Mr. Resweber, that he (plaintiff) had plenty money coming to him, and later on wrote a letter to Mr. Resweber again indicating that Cliff's bill would be taken care of but that they had not yet received a settlement from the Trinity Farm Construction Company for the work he had done. Plaintiff testified that at that time neither Benhard nor Waterbury said or did anything which gave him any reason to believe that the statement was subject to any correction or amendment and that his own bookkeeper at that time, a Mr. Williams, looked over the statement and expressed the opinion that it was substantially correct. He admits, however, that on a certain occasion after that Benhard told him that there were outstanding checks which hadn't come back from the bank when Mr. Waterbury made up the statement.

Mr. Waterbury's testimony is to the effect that on or about December 18, 1933 he was asked by plaintiff and Mr. Benhard to make out a statement of the plaintiff's account and he at that time prepared the statement on which the demand is predicated. As already stated Waterbury was bookkeeper for another business enterprise of the defendants and as we understand his testimony did not keep books for the partnership doing work on the spillway contract. He states that he obtained the figures for making the statement from the ledger account on the books of the Palmetto Mercantile Company, from a list of personal checks of J. H. Benhard, from the estimates of the engineer in charge of the spillway work and from accounts for groceries and tobacco kept by the plaintiff. The statement showed a balance in favor of the plaintiff amounting to $691.59 against which there was a subsequent payment as shown by the check in the sum of $125, leaving the new balance of $566.59, the amount sued on. He testifies as a witness for the plaintiff that at the time he completed the statement he was informed by Benhard that it was subject to revision on account of other checks he had written and which were to be charged to the plaintiff and which he did not have in his possession at the time.

Mr. A. E. Resweber, who also testified as a witness for the plaintiff, corroborated the latter's testimony with regard to Benhard's visit and conversation with him at his store. He also confirms that part regarding the letter written to him by Benhard which had been misplaced, but he produced what he says was an exact copy thereof made for him by Mr. Leon Haas, Jr., who at that time was the plaintiff's attorney.

It would seem therefore from the testimony so far discussed, that at the time the statement was made plaintiff was convinced that he had the balance shown thereon coming to him and that Benhard felt that he still owed at least a considerable amount of that balance to the plaintiff, and whilst he and Waterbury both knew that the balance was subject to some further charges neither had any accurate idea of what the amount was. The plaintiff, an uneducated man who only signs his name mechanically, appears to have relied entirely on what was told him by Benhard, Waterbury and his own bookkeeper Williams, whom it seems he was unable to locate and produce as a witness, and from such information he became convinced that the amount shown on the statement was the true balance coming to him. Benhard on the other hand appears to have had many irons in the fire at the same time as he and his partner owned and operated the Palmetto Mercantile Company and a moss gin business, besides this spillway job on which were employed some two hundred men. It appears also that this last job was not as profitable as it might have been and consequently he had to draw at times on funds from some of his other accounts in order to meet his expenses in connection with it. It appears also that by reason of his being away on the job most of the time he gave very little personal attention to his accounts, and especially was delayed in checking up on his bank statements. The bookkeeper, Waterbury, explains that he had no personal knowledge of any checks issued, except those issued on the Palmetto Mercantile Company and charged to the account of Benhard and Clopton.

It is testified to by both Benhard and Waterbury that they met a few days before the trial of this case in the office of the attorney for the defendants and prepared a list of checks issued by Benhard to laborers employed by Cliff and which list was offered in evidence and is on file in the record. It is indicated that thirty-eight checks totalling the sum of $581.58 were issued to the plaintiff and various individuals, said by Benhard to have been plaintiff's employees, in the months of October and November, 1933. Cancelled checks marked from D–1 to D–30, inclusive, amounting to the sum of $482.73 were produced and offered in evidence as well as certain orders given by the plaintiff, marked from D–31 to D–38, amounting to the sum of $98.85, for which checks were also issued, but lost. Waterbury states that he does not know of his own personal knowledge for what purpose these checks were issued but he is positive that they are in no way a duplication of any of the items carried on the statement which he prepared on December 18, 1933. Mr. Benhard's testimony of course supports all of these charges and he is positive in his statement that at the time the Waterbury statement was made the plaintiff was informed that the balance was subject to those charges.

■ Counsel for plaintiff contend that these checks and orders do not constitute the best proof of payment by the defendants for the account of plaintiff's labor. They state that the defendants should have produced the parties to whom the checks were made payable themselves in order to verify the account for which they were paid as, they urge, some of these laborers, if not all, were also employed by Benhard personally and the checks given them might represent payments made on his account and not for the account of plaintiff.

They have not shown, however, that they made any effort to summon these laborers themselves, or that it was impossible for them to secure them as witnesses. As a matter of fact they did summon a few of them and used them as their own witnesses. Those called were Wallace Pickens, Houston Pickens, Sam LeBlanc, J. C. Teal and Foster Bennett. Wallace Pickens testified that he worked for both Benhard and Cliff on the spillway job and for both of his engagements he was paid by Benhard. He could not remember the amount nor the exact time he was paid for, but admitted he was paid three checks by Benhard for work done for the plaintiff during the month of November on orders issued by the plaintiff. The list of checks introduced in evidence shows that one was issued to Wallace Pickens and one to Wallace Picket but apparently the same man, in November, 1933. Houston Pickens admitted that he worked for the plaintiff for four days and that he had an order from him on Benhard for that amount and that Benhard paid him in cash. He denies that he ever received a check for $3.54 which is found listed and made payable to "Houston Picket." The defendants charged the amount of the check instead of the $4 cash to the plaintiff. Sam LeBlanc testified that he worked for the plaintiff and remembers an occasion when a man named Barrier who also worked for the plaintiff was discharged after one day's work and was paid by plaintiff after which he went to work for Benhard. This evidence is used by the plaintiff's counsel as proof of errors in the list of checks which defendants claim are chargeable to the plaintiff's account. It is, however, the only error which was shown and the defendants admit that it was erroneously charged against the plaintiff. J. C. Teal testified that he worked for the plaintiff for two months, more or less; that he never worked for Benhard and Clopton and that he was paid by checks drawn by Benhard. Foster Bennett likewise testified that he worked only for the plaintiff and never for the defendants and that he received in payment for his labor one check in the sum of $11.50 from Benhard which is in the list of checks charged to the plaintiff.

It is thus seen that from the testimony of those of the laborers produced as witnesses by the plaintiff he was able to derive but little support in disputing the defendants' contention, as aside from the proof of one error in the sum of $4.26 which is admitted by the defendants, their testimony tends to corroborate rather than impeach the testimony of the defendant Benhard.

■ Considered as a whole, it seems to us that the testimony, both oral and documentary, support the contention of the defendants that the statement of December 18, 1933 on which the plaintiff relies does not reflect the true and exact situation of his account with the defendant

as of that date and that the balance struck was subject to a further reduction by the amount of the payments made for his labor which is shown by the checks produced by the defendants. The case after all is one presenting absolutely a question of fact on which the district judge has given us the benefit of his views, and after a thorough consideration, we find ourselves in the position where we are unable to say that he has manifestly erred. For these reasons the judgment appealed from is affirmed.